OPINION
On October 13, 2000, appellant Edward Barker was indicted by the Licking County Grand Jury for one count of burglary in violation of R.C.2901.12. The indictment alleged that on September 27, 2000, appellant trespassed in an occupied structure or separately secured or occupied portion of the structure, with intent to commit theft. The Bill of Particulars alleged that appellant broke into an attached garage of a residence in Nashport, Ohio, and removed items from the garage including a grinder, binocular case, and gun case. The Bill of Particulars further indicated appellant was observed by the son of the owner of the residence, who lived next door, and notified the sheriff's department.
Appellant waived his right to a jury trial, and stipulated to all elements of the crime of burglary, with the exception of the requirement that the structure in which he trespassed must be an occupied structure. The case proceeded to bench trial solely on the issue of whether the structure was occupied. Following trial, appellant was convicted of burglary as charged. He was sentenced to a two-year period of community control. Appellant assigns a single error on appeal:
 ASSIGNMENT OF ERROR THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO WARRANT A CONVICTION OF THE DEFENDANT-APPELLANT.
Appellant argues that the evidence was insufficient to demonstrate that the structure was occupied. Sufficiency means the legal standard applied to determine whether the case may go to the jury, or whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy, and a conviction based on legally insufficient evidence constitutes a denial of due process. Id.
The term "occupied structure" is defined by R.C.2909.01 (C):
 (C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
In order to commit common law burglary, the house had to be occupied as a dwelling, although a temporary absence with the intention of returning would not render it unoccupied. State v. Green (1984), 18 Ohio App.3d 69,71. However, a house that was permanently abandoned, or its use changed to something other than residential, would cease to be regarded as a dwelling. Id.
In adopting the definition of occupied structure found in R.C.2909.01, the General Assembly intended to broaden the common law concept of the offense of burglary from one of an offense against security of habitation, to one concerned with the risk of harm created by the actual or likely presence of a person in a structure of any nature. Id. Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but has neither been permanently abandoned nor vacated for a long period of time, may be regarded as a structure maintained as a dwelling within the meaning of R.C. 2909.01(C)(1). Id. at 72. In this context, the definition of occupied structure includes a dwelling whose usual occupant is absent on a prolonged vacation, a dwelling whose occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. Id. In all of these examples, even through the dwelling is not presently occupied as a place of habitation, the situation is temporary, and persons are likely to be present from time to time to help maintain the character of the property as a dwelling. Id.
In the instant case, the owner and primary occupant of the dwelling died in March of 2000. However, her daughter and two grandsons lived next door. Karen Sensebaugh, the daughter of the owner of the house, testified that for approximately a year, she had been in the process of moving into the house. Tr. 27. She further testified that she was in the house about once a week. Tr. 28. Robert Sensebaugh, who lived next to the structure with his mother and brother, testified that the family was in the house off and on all the time. Tr. 8. He testified that both his mother and brother kept items at the house, and they kept food in the freezer. Tr. 8. He testified that on several occasions, his sister who was visiting from Illinois stayed at the residence for approximately a week at a time. Tr. 10. Malcomb Sensebaugh, another grandson of the former occupant of the house, testified that his mother was in the process of moving into the house, and some of her things and his things were in the house. Tr. 19. He testified that they were in and out working on fixing the house. Tr. 20. He also testified that he used his grandmother's car, which was in the garage attached to the house, whenever his car broke down, which was several times a week. Tr. 20. Brandy Sensebaugh, the wife of the decedent's grandson, testified that they would go in and out of the residence whenever they needed food, as there was food remaining in the freezer and pantry. Tr. 23. She testified that she was in the house approximately once a week. Id. She further testified that she kept a garden behind the house, and kept her gardening tools at the house. Id. The evidence further reflected that in November, two months after the burglary, Karen Sensebaugh did actually move into the residence.
Based on all of the testimony, the evidence was sufficient to support the finding that despite the death of the owner, the house continued to be maintained as a dwelling, even though it was temporarily unoccupied at the time of the crime. The assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Common Pleas Court is affirmed. Costs to appellant.
Hon. W. Scott Gwin, P.J. Hon. William B. Hoffman, J. Hon. Sheila G. Farmer, J. concur.